UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 05-CV-10164-JLT

|  |  |
|---|---|
| FEDERAL INSURANCE COMPANY, as subrogee of RUSSELL and REBECCA RAY, | ) ) ) |
| Plaintiff | ) ) |
| v. | ) ) |
| TONY BARONE PLUMBING AND HEATING, INC. | ) ) ) ) |
| Defendant and Third Party Plaintiff | ) ) |
| v. | ) ) |
| RICHARD TRAVAGLIONE, KENNETH CROSS and GLENN SPEER | ) ) ) |
| Third Party Defendants | ) ) ) |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THIRD PARTY COMPLAINT AGAINST KENNETH CROSS PURSUANT TO FED.R.CIV.P 12(b)(6)

Kenneth Cross ("Cross"), a Third Party Defendant in this action, hereby submits this

Memorandum in Support of the Motion to Dismiss the Third Party Complaint (the "Motion")

against him filed by Tony Barone d/b/a/Tony Barone Plumbing and Heating, Inc. ("Barone").

For the reasons set forth in the Motion and herein, the Motion should be allowed and the Third

Party Complaint against Kenneth Cross should be dismissed.

The Third Party Complaint arises out of a Complaint (the "Complaint") filed by Federal Insurance Company ("Plaintiff") as subrogee of Russell and Rebecca Ray (the "Rays") against Richard Cumbie ("Cumbie") and Barone as Defendants. Barone subsequently filed the Third Party Complaint against Cross and two other individuals, Richard Travaglione and Glenn Speer. The Complaint was filed in connection with certain damage incurred by the Rays, who are Plaintiff's insureds, relative to property located at 9 Eel Point Road, Nantucket, Massachusetts (the "Subject Property"). The basis of the Complaint is damage which occurred to the Subject Property on or about January 18, 2004 allegedly as a result of the improper installation of a domestic water pipe on the second floor of the Subject Property which froze and ruptured. (See Complaint, Sections 12 and 13).

Cross was the seller of the Subject Property to the Rays prior to January 18, 2004, the date of the alleged loss. Cross's sale of the Subject Property to the Rays was pursuant to a Purchase and Sale Agreement dated July, 2003, a copy of which is annexed hereto as Exhibit A (the "Purchase Agreement").

The Rays had agreed to release Cross in connection with the sale of the Subject Property, and upon that sale, the Rays would have no further claim against Cross. The Purchase Agreement sets forth all obligations of Cross to the Rays, that the Rays were purchasing the Subject Property in its "As Is" condition, and that all obligations of Cross terminated upon the sale to the Rays of the Subject Property.

Section 26 of the Purchase Agreement states, in pertinent part, as follows:

"The BUYER(S) have had an opportunity to inspect the Premises and agree to accept it in its **as-is condition** except as set forth in Paragraph 8 hereunder, provided the SELLER(S) agree to address the following inspection matters...." (emphasis supplied).

2

Section 12 of the Purchase Agreement states, in pertinent part, as follows:

"The acceptance of a deed by the BUYERS or his nominee or assignee as the case may be, shall be deemed a full performance and discharge of every agreement and obligation herein contained or expressed, except such as are, by the terms hereof, to be performed after the delivery of said deed, in which event this agreement shall be continued in full force until such time as said items have been completed as agreed."

Accordingly, pursuant to the Purchase Agreement, the Rays bought the Subject Property in its as-is condition and there was a full and complete release of Cross by the Rays. It is notable that the Plaintiff has elected not to name Cross as a defendant in the Complaint since, as a matter of law, the Rays had released Cross from all liability for any defects whatsoever in the Subject Property.

Although there is no basis to do so, Barone is attempting to create liability on Cross even know the Rays have released Cross from any claim with regard to the Subject Property. As a matter of law, there is no legal theory which supports Barone's Third-Party Complaint against Cross. The pleadings presently filed in this matter also set forth that from a factual perspective, Barone's Third-Party Complaint establishes no basis whatsoever for any claim by Barone against Cross.

It is notable that Barone admits the allegations set forth in Section 11 of the Complaint which reads as follows: "Prior to January 18, 2004, defendant Barone was contracted to provide plumbing services, including but not limited to, the installation of domestic water lines in the Subject Property during its construction." Barone also admits that portion of allegation 12 that a domestic water pipe froze and ruptured, but alleged that he lacks sufficient information to admit or deny the remaining averments set in that Paragraph 12.

The Third Party Complaint alleges that if the Rays suffered damages as alleged in the Complaint, then the damages were caused by the negligence of Cross. The Third Party

3

Complaint further states if Judgment is entered in favor of the Plaintiff against Barone, then
Cross is liable to indemnify Barone who is a joint tort-feasor.

As noted above, Barone has alleged that he installed the pipe and that the pipe froze.
There are no averments set forth in the Complaint which support any cause of action by Barone
against Cross. These facts, combined with the release by the Rays of Cross under the Purchase
Agreement, compel the allowance of the Motion to dismiss the Third Party Complaint.

Accordingly, for the foregoing reasons, Cross prays that the Third Party Complaint be
dismissed and that Cross be awarded attorney fees and costs in connection with the preparation
of this Motion to Dismiss.

Respectfully submitted,

KENNETH CROSS

By his attorney,

Mark J. Coltin, PC
BBO # 093180
101 Merrimac Street
P.O. Box 9601
Boston, MA 02114-9601
(617) 482-0060

Date: June ___, 2005

## CERTIFICATE OF SERVICE

I, Mark J. Coltin, counsel for Kenneth Cross, a Third Party Defendant in this action,
hereby certify that on this ___ day of June, 2005, I caused a copy of the Motion to Dismiss
Third Party Complaint Pursuant to Fed.R.Civ.P.12(B)6 and Notice of Appearance to be served
on all counsel of record, as set forth below, by mailing a copy, first class mail, postage-prepaid
of each such pleading:

4

Patrick J. Loftus, III, Esq.
9 Park Street—5th Floor
Boston, MA  02108

Robert M. Kaplan, Esq.
Daniel J. Luccaro, Esq.
Cozen & O'Connor
1900 Market Street
The Atrium – Third Floor
Philadelphia, PA  19103

Peter A. Palmer, Esq.
Fuller, Rosenberg, Palmer & Beliveau
340 Main Street – Suite 817
Worcester, MA  01608

John R. Callahan, Esq.
Philip T. Tierney, Esq.
Finnegan, Underwood, Ryan & Tierney
22 Battery March Street –4th Floor
Boston, MA 02109

James J. Duane, III, Esq.
Andrew R. Winer, Esq.
Taylor, Duane, Barton & Gilman
160 Federal Street – 5th Floor
Boston, MA  02110

Executed on this _____ day of June, 2005.

_____
Mark J. Coltin

**PURCHASE AND SALE AGREEMENT**
from the offices of
GLIDDEN & GLIDDEN, P.C.
37 CENTRE STREET
NANTUCKET, MA 02554

1.    AGREEMENT MADE THIS _____ DAY OF JULY, 2003

Parties:

**KENNETH P. CROSS**
**JOAN K. BARR**
PO Box 1385
Nantucket, MA 02554

hereinafter called the **SELLER(S)**, agrees to SELL and

**RUSSELL T. RAY**
**REBECCA B. RAY**
115 Longwood Road
Baltimore, MD 21210-2142

or nominee, hereinafter called the **BUYER(S) OR PURCHASER(S)** agree to
BUY, upon the terms hereinafter set forth, the following described premises:

2.    DESCRIPTION

Land with all structures thereon situate at **9 Eel Point Road,** Nantucket,
Massachusetts shown as Lot 5 on plan numbered 38015-B, drawn by Schofield
Brothers, Inc. Surveyors, dated April 6, 1978 and filed with Certificate of Title No.
8314 at the Nantucket Registry District. For Grantors' title see Certificate of Title
No.20,207 at said Registry District.

3.    BUILDINGS, STRUCTURES, IMPROVEMENTS, FIXTURES

Included in the sale as part of said premises are the buildings, structures, and
improvements and the fixtures belonging to the SELLER(S) and used in
connection therewith including, if any, venetian blinds, window shades, screens,
screen doors, storm windows and doors, awnings, shutters, furnaces, heaters,
heating equipment, stoves, ranges, oil and gas burners and fixtures appurtenant
thereto, hot water heaters, plumbing and bathroom fixtures, electric and other
lighting fixtures, mantels, outside ventilators, garbage disposals, dishwashers,
washing machines, dryers, refrigerators, other large appliances and wall to wall
carpeting.

C \Documents and Settings\Whitney G\Local Settings\Temporary Internet
Files\OLRA\PS sepic doc

## 3A.    PERSONAL PROPERTY

Included in the sale are items of personal property as set out in Exhibit "A" attached hereto. Sellers agree to deliver a Bill of Sale in the amount of $100,000.00 for said items of personalty at time of closing hereunder.

## 4.    TITLE DEED

Said premises are to be conveyed by a good and sufficient Statutory Quitclaim deed running to the BUYER(S), or to the nominee or assignee designated by the BUYER(S) by written notice to the SELLER(S) at least seven(7) business days before the deed is to be delivered as herein provided, and said Deed shall convey good, clear, record and marketable title thereto, free from encumbrances, except:

(a)    Laws, by-laws, rules and regulations, whether federal, state or local, which affect the use of the Premises, including, but not limited to, building codes, the Massachusetts Zoning Act and Nantucket Zoning By-law, state and local wetlands protection laws, and rules and regulations of the Nantucket Historic District Commission and the Nantucket Board of Health; provided that none of the foregoing shall prohibit, prevent, or interfere with the use of the Premises for the BUYER(S)'s intended purpose of use and occupancy of the single family dwelling and cottage upon the premises.

(b)    Such taxes for the then current year as are not due and payable on the date of the delivery of the deed;

(c)    Any fee which may be imposed by the Nantucket Land Bank Commission upon the transaction which is the subject of this agreement, which the BUYER(S) agrees to pay at the time of the delivery of the deed.

(d)    Subject to an easement set forth in a grant made by R. Draper Richards to the Town of Nantucket recorded in Book 145, Page 306 as affected by Easement Agreement registered as Document No. 27404.

(e)    Bike Path Easement running in favor of the County of Nantucket registered as Document No. 79122.

(f)    Temporary Bike Path Easement running in favor of the County of Nantucket registered as Document No. 79123.

In addition to the foregoing, if the title to said premises is registered in the Land Court, said deed shall be in form sufficient to entitle the BUYER(S) to a Certificate of Title of said premises, and the SELLER(S) shall deliver with said

- 2 -

deed all instruments, if any, necessary to enable the BUYER(S) to obtain such Certificate of Title.

5.     PLANS

If said deed refers to a plan necessary to be recorded therewith, the SELLER(S) shall deliver such plan with the deed in a form acceptable for recording or registration.

6.     PURCHASE PRICE

The agreed purchase price for the aforesaid described premises is **THREE MILLION EIGHT HUNDRED AND NO/100 ($3,800,000.00) DOLLARS**, of which Three Hundred Eighty Thousand and NO/100 ($380,000.00) dollars have been paid as a deposit this date, and Three Million Four Hundred Twenty Thousand and NO/100 ($3,420,000.00) dollars are to be paid at closing, by certified, cashier's, treasurer's or bank check, or by wire transfer to SELLER(S)'s attorney, (bank and account number to be provided upon request).

7.     TIME FOR PERFORMANCE; DELIVERY OF DEED

Such deed is to be delivered at 11:00 A.M. on the **8th** day of **September, 2003** at the Nantucket Registry of Deeds, unless otherwise agreed upon in writing. Time is of the essence of this Agreement.

8.     POSSESSION AND CONDITION OF PREMISES

Full possession of said premises (main house and cotttage) is to be delivered at the time of the delivery of the deed, free of tenants, **professionally cleaned (including rugs), and in the same condition as they were on July 10, 2003,** reasonable use and wear thereof excepted and not in violation of building, zoning, health and HDC regulations and in compliance with the provisions of any instrument referred to in clause 4 hereof. Sellers agree to repaint any wall markings or dents throughout the house caused by the tenants. The BUYER(S) shall be entitled to an inspection of said premises prior to the delivery of the deed in order to determine whether the conditions thereof comply with the terms of this clause.

9.     EXTENSION TO PERFECT TITLE OR MAKE PREMISES CONFORM

If the SELLER(S) shall be unable to give title or to make conveyance, or to deliver possession of the premises, all as herein stipulated, or if at the time set for the delivery of the deed the premises do not conform with the provisions hereof, then the SELLER(S) shall use reasonable efforts to remove any defects in title, or to deliver possession as provided herein, or to make the said premises conform to the provisions hereof, as the case may be, in which event the

SELLER(S) shall give written notice thereof to the BUYER(S) at or before the time for performance hereunder and thereupon the time for performance hereof shall be extended for a period of thirty (30) days.

### 10. FAILURE TO PERFECT TITLE OR TO MAKE PREMISES CONFORM, ETC.

If at the expiration of the extended time the SELLER(S) shall have failed so to remove any defects in title, deliver possession, or make the premises conform, as the case may be, all as herein agreed, then, at the BUYER(S)'s option, any payments made under this agreement together with interest accrued thereon shall be forthwith refunded to the BUYER(S) and all other obligations of all parties hereto shall cease and this agreement shall be void and without recourse to the parties hereto.

### 11. BUYER(S)'S ELECTION TO ACCEPT TITLE

The BUYER(S) shall have the option, at either the original or any extended time for performance, to accept such title as the SELLER(S) can deliver to the said premises in its then condition and to pay therefore the purchase price without deduction, in which case the SELLER(S) shall convey such title except that in the event of such conveyance in accord with the provisions of this clause, if the said premises shall have been damaged by fire or casualty insured against, then the SELLER(S) shall, unless the SELLER(S) has previously restored the premises to their former condition, either,

(a)     Pay over or assign to the BUYER(S), on delivery of the deed, all amounts covered or recoverable on account of such insurance, less any amounts reasonably expended by the SELLER(S) for any partial restoration, or

(b)     If a holder of a mortgage on said premises shall not permit the insurance proceeds or a part thereof to be used to restore the said premises to their former condition or to be so paid over or assigned, give to the BUYER(S) a credit against the purchase price, on delivery of the deed, equal to said amounts so recovered or recoverable and retained by the holder of said mortgage less any amounts reasonably expended by the SELLER(S) for any partial restoration.

### 12. ACCEPTANCE OF DEED

The acceptance of a deed by the BUYER(S) or his nominee or assignee as the case may be, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except such as are, by the terms hereof, to be performed after the delivery of said deed, in which event this agreement shall be continued in full force until such time as said items have been completed as agreed.

- 4 -

## 13. USE OF PURCHASE MONEY TO CLEAR TITLE

To enable the SELLER(S) to make conveyance as herein provided, the SELLER(S) may, at the time of the delivery of the deed, use the purchase money or any portion thereof to clear the title of any or all encumbrances or interests, provided that all instruments so procured are recorded simultaneously with the delivery of said deed.

## 14. INSURANCE

Until the delivery of the deed, the SELLER(S) shall maintain insurance on said premises as follows:

(a)  Fire and casualty – as presently insured but not less than full replacement value.

## 15. ADJUSTMENTS

Taxes for the current fiscal year and fuel oil, if applicable shall be apportioned as of the day of performance of this agreement and the net amount thereof shall be added to or deducted from, as the case may be, the purchase price payable by the BUYER(S) at the time of the delivery of the deed.

## 16. ADJUSTMENTS OF UNASSESSED TAXES

If the amount of said taxes is not known at the time of the delivery of the deed, they shall be apportioned on the basis of the taxes assessed for the previous year, with a reapportionment as soon as the new tax rate and valuation can be ascertained; and, if the taxes which are to be apportioned shall thereafter be reduced by abatement, the amount of such abatement, less the reasonable cost of obtaining the same, shall be apportioned between the parties, provided that neither party shall be obligated to institute or prosecute proceedings for an abatement unless herein otherwise agreed. The provisions of this paragraph shall survive the delivery of the deed.

## 17. DEPOSIT

All deposits made hereunder shall be held by **LUCILLE JORDAN ASSOCIATES** as **ESCROW AGENT** subject to the terms of this agreement and shall be duly accounted for at the time for performance of this agreement, provided however that in the event of any disagreement the ESCROW AGENT shall retain said deposits pending instructions mutually given by the SELLER(S) and BUYER(S). The said deposit shall be invested in an insured account, and income thereon shall accrue, shall follow the deposit and shall be paid over to the party entitled.

- 5 -

## 18.  BROKER(S)'S FEE

A BROKER's fee for professional services of **$234,000.00** is due from the
SELLER(S) payable as follows:**LUCILLE JORDAN ASSOCIATES - $97,500.00;
SANFORD REAL ESTATE - $97,500.00); DENBY REAL ESTATE - $19,500.00
and THE MAURY PEOPLE - $19,500.00,** the **BROKER(S)** herein.  Said
Commission to be paid if and when title passes and the deed is recorded, but not
otherwise.  The BROKER(S) named herein warrant that they are duly licensed by
the Commonwealth of Massachusetts, and join in this agreement and become a
party hereto, in so far as any provisions of this agreement expressly apply to him
or them, and to any amendments or modifications of such provisions to which
they agree in writing.

## 19.  AGENCY DISCLOSURE

The BROKER(S) herein represent the SELLER(S), not the BUYER(S), in the
marketing, negotiation, and sale of property, unless otherwise disclosed.
However, each BROKER or SALESPERSON has an ethical and legal obligation
to show honesty and fairness to each party in all transactions.  The BUYER(S)
hereby acknowledges receipt of this disclosure prior to his/her/their execution of
this agreement.

## 20.  WARRANTY AS TO BROKER

The Buyer represents and warrants that the Buyer was not introduced to the
Premises by any broker other than those listed in Paragraph 18 and that the
Buyer has not dealt with any other broker in connection with the transaction
which is the subject of this Agreement in any fashion which will give rise to a
claim for a commission in this sale, other than the commission to be paid
pursuant to Paragraph 18 of this Agreement.  The Buyer hereby undertakes and
agrees to save and hold harmless the Seller from and against any claims for
brokerage commissions which may be asserted against the Seller in connection
with this sale, including all costs and expenses which may be incurred by Seller
in defending against any such claim, as to which the Buyer shall be in breach of
such representation and warranty.  The Seller represents and warrants that the
Seller has given no exclusive listing of the Premises such as to result in a
broker's commission being payable with respect to this sale, other than the
commission to be paid pursuant to said Paragraph 18, and has not listed the
Premises under circumstances which would give rise to any other commission
being payable in this sale in the absence of any dealings between the Buyer and
any broker other than those listed in Paragraph 18. The Seller hereby undertakes
and agrees to save and hold harmless the Buyer from and against any claims for
brokerage commissions which may be asserted against the Buyer in connection
with this sale, including all costs and expenses which may be incurred by Buyer
in defending against any such claim, as to which the Seller shall be in breach of
such representation and warranty.

### 21.   BUYER(S)'S DEFAULT; DAMAGES

If the BUYER(S) shall fail to fulfill the BUYER(S)'s agreements herein, and
SELLER(S) is not in default hereunder, all deposits made hereunder by the
BUYER(S) shall be retained by the SELLER(S) as liquidated damages in lieu of
all other rights or remedies at law or in equity and specifically in lieu of any action
for specific performance.

### 22.   WARRANTIES, REPRESENTATIONS AND CONDITIONS

The BUYER(S) acknowledges that the BUYER(S) has neither been influenced to
enter into this transaction nor has he relied upon any warranties or
representations not set forth or incorporated in this agreement or previously
made in writing.

### 23.   LEGAL AND CONVEYANCING CONDITIONS

(a)   The SELLER(S) shall provide a Certificate that no labor has been
performed on or at the premises, which would give rise to a mechanics
lien, and that there are no tenants or occupants in possession of the
premises.

(b)   The SELLER(S) shall provide at closing a CERTIFICATE OF
OCCUPANCY covering the subject premises to the extent applicable.

(c)   SELLER(S) shall provide at closing a FIRE DEPARTMENT CERTIFICATE
stating that all required smoke detectors have been installed in the
premises.

(d)   SELLER(S) agrees to execute, for the benefit of any mortgagee, a UFFI
CERTIFICATE stating that there is no urea formaldehyde foam insulation
in any structure on the premises as of the date for the delivery of the deed
hereunder.

(e)   SELLER(S) agrees to execute and deliver to the BUYER(S) at closing an
affidavit or certification of compliance with the Internal Revenue Code
(IRS) Section1445(b)(2) stating that they are not a "foreign persons" as
defined by IRS Section 1445 and providing their taxpayer identification
number(s).

(f)   SELLER(S) agrees to execute and deliver to the BUYER(S) at closing a
form 1099-S to be filed with the Internal Revenue Service pursuant to
Section 6045(e) of the Internal Revenue Code.

- 7 -

## 24.   EFFECT OF RESCISSION

In the event that this agreement shall be rescinded by notice duly given pursuant to any provision hereof, this agreement shall be null and void and without recourse to any party hereto, and all deposits, with interest accrued shall be returned to the BUYER(S).

## 25.   COMPLIANCE WITH NANTUCKET BOARD OF HEALTH SEPTIC SYSTEM REGULATIONS

The parties acknowledge that Section 66.02 (2) provides that prior to selling real property in Nantucket which contains an existing sewage disposal system, the owner of said property is required to have the system inspected by a Registered professional Engineer or Sanitarian whose inspection indicates that the system is functional and in compliance with local health laws and regulations including Title V. The SELLER(S) agrees, at his sole cost and expense, to have said system inspected, to file an "As-Built" plan for the system with the Nantucket Board of Health, and to obtain a duly issued inspection from and/or Certificate of Compliance from the Nantucket Board of Health which indicates that the system is functioning prior to the date for the delivery of the deed hereunder. The SELLER(S) agrees that the premises shall be in compliance with local health laws and regulations including Title V or exempt therefrom at the time of delivery of the deed.

## 26.   CONDITION OF THE PREMISES – INSPECTION MATTERS

The BUYER(S) have had an opportunity to inspect the Premises and agree to accept it in its as-is condition, except as set out in Paragraph 8 hereunder, provided the SELLER(S) agree to address the following inspection matters as set out in Exhibit "B" attached hereto:

(a)   Seal areas of evidence of water seepage in the basement with waterproof cement.

(b)   Repair eye bolts attached to garage door (guest house).

(c)   Have electrician re-connect wire to transformer over the air handler.

(d)   Repair deck boards which were not fastened to the framing below.

(e)   Repair leak in supply system.

(f)   Repair leak in the tub drain in the basement.

- 8 -.

(g)    Adjust or repair bathroom entry door hardware so that it functions properly.

(h)    Repair areas of living room flooring which have buckled.

(i)    Finish off wood trim of shelving in kitchen cabinets in main house.

## 27.   EXTENSION AUTHORITY

By executing this agreement, the BUYER(S) and SELLER(S) hereby grant to their attorneys, the actual authority to bind them for the limited purpose of allowing them to grant extensions, and the BUYER(S) and SELLER(S) shall be able to rely upon signature of said attorneys as binding unless they have actual knowledge that either party has disclaimed the authority granted herein to bind them.

## 28.   TITLE STANDARDS

Any matter relating to the performance of this agreement, which is the subject of a title, practice or ethical standard of the Massachusetts Conveyancer Association shall be governed by such standard to the extent applicable.

## 29.   TITLE INSURANCE

Title to be conveyed pursuant to this agreement shall not be deemed to be in compliance with provisions of Paragraph 4 of this agreement, unless at a minimum, commitment for the issuance of an owner's title insurance policy to the BUYER(S) or the BUYER(S)'s nominee and a lender's title insurance policy for a prospective mortgagee, shall be available to the BUYER(S) at the time of delivery of the deed, for the insurance of the interest of such parties in the property subject only to standard exclusions from coverage printed in the policy cover and exceptions for real estate taxes not yet due and payable and for anther other matters listed in Paragraph 4 of this agreement. Such policy shall be in the ALTA standard form and shall be issued by a major title insurance company doing business in Massachusetts. The BUYER(S) shall pay all standard and usual premiums for the issuance of any such title insurance policy if such coverage is desired.

## 30.   VENUE

The parties hereto agree that all actions on this agreement shall be brought in the Superior Court Department of the Trial Court, Commonwealth of Massachusetts, Nantucket Division, to the extent that said Court shall have jurisdiction of the subject matter in any such action.

- 9 -

## 31.   SEVERABILITY

If any provision or condition of this agreement shall be deemed invalid or
unenforceable, the remaining provisions and conditions shall remain in full force
and effect and shall be valid and enforceable to the fullest extent permitted by
law.

## 32.   CONSTRUCTION OF AGREEMENT

This instrument, executed in multiple counterparts, is to be construed as a
Massachusetts contract, is to take effect as a sealed instrument, sets forth the
entire contract between the parties, is binding upon and enures to the benefit of
the parties hereto and their respective heirs, devisees, executors, administrators,
successors and assigns, and may be cancelled, modified or amended only by a
written instrument executed by both the SELLER(S) and the BUYER(S). If two or
more persons are named herein as BUYER(S) their obligations hereunder shall
be joint and several.

## 33.   NOTICE

All notices to be given pursuant to this agreement shall be effective only when
given in writing and sent via facsimile, or by private express delivery service
requiring signature upon receipt, to the party to whom addressed, at the following
addresses and notice shall be deemed given by mailing:

### TO SELLER(S)

Kenneth P. Cross
Joan K. Barr
PO Box 1385
Nantucket, MA 02554

With a regular mail copy to:

Richard J. Glidden, Esquire
Glidden and Glidden, P.C.
37 Centre Street, P.O. Box 1079
Nantucket, MA 02554

### TO BUYER(S)

Russell T. Ray
Rebecca B. Ray
115 Longwood Road
Baltimore, MD 21210-2142

C:\Documents and Settings\Whitney G\Local Settings\Temporary Internet Files\OLKA\P.S. jcpsic.doc

With a regular mail copy to:

Whitney A. Gifford, Esquire
Reade, Gullicksen, Hanley & Gifford
6 Young's Way
PO Box 2669
Nantucket, MA 02584

IN WITNESS HEREOF THE PARTIES HAVE SET THEIR HANDS AND SEALS
THE DAY AND YEAR FIRST ABOVE WRITTEN.

SELLER(S)

Kenneth P. Cross
145 42 5025
Social Security Number

John K. Barr
172 34 9365
Social Security Number

BUYER(S)

_____
Russell T. Ray

_____
Social Security Number

_____
Rebecca B. Ray

_____
Social Security Number

BROKER AND ESCROW AGENT

Lucille Jordan Associates

by Lucille Bonchard

With a regular mail copy to:

Whitney A. Gifford, Esquire
Reade, Gullicksen, Hanley & Gifford
6 Young's Way
PO Box 2669
Nantucket, MA 02584

IN WITNESS HEREOF THE PARTIES HAVE SET THEIR HANDS AND SEALS
THE DAY AND YEAR FIRST ABOVE WRITTEN.

SELLER(S)

_____
Kenneth P. Cross

_____
Social Security Number

_____
Joan K. Barr

_____
Social Security Number

BUYER(S)

_____
Russell T. Ray
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
Social Security Number

_____
Rebecca B. Ray
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
Social Security Number

BROKER AND ESCROW AGENT

Lucille Jordan Associates

by Lucille Bouchard 1/30/03

- 11 -

## BROKER

Sanford Real Estate

by: _Eaq Mar_____

EXHIBIT A

## Inventory for 9 Eel Point Road

July 12, 2003

Prepared by Joelle Bouchard & David Callahan

### MAIN HOUSE:

Kitchen:
    Cuisinart Coffee Maker
    Krups Coffee Maker
    Sharp Convection Oven
    Villaware Toaster
    Uniden Cordless telephone
    Cuisinart food processor
    Warner Blender
    Black & Decker hand mixer
    6 Bar Stools
    Pot rack over Vicking range
    Assorted glassware
    Assorted wine glasses
    Martini glasses
    Brandy glassed
    Assorted dinnerware including dinner & side plates, bowls, cups & saucers
    Glass mixing bowl set
    Stainless steel paper towel holder
    Stainless steel canister set
    Spice rack
    2 ceramic hot plates
    Measuring cups
    Salt & peppershaker set
    Ceramic bowl
    Cutlery set
    Teapot
    Various All Clad pots and pans
    Glass oil & vinegar set
    Various cook books
    Various cooking utensils
    1 wooden bowl
    Colander
    Various Tupperware

**Kitchen: Cont.**
>   2 wooden cutting boards
>   Various baking pans & cookie sheets
>   Dish towels
>   Silverware
>   Stake knife set
>   Place mats

Living Room:
>   2 oak armchairs
>   Oval-walnut Veneer Table
>   Coffee table
>   Beige & tan area rug
>   2 three cushion couches beige & tan
>   2 club chairs (match couch)
>   2 white floor lamps
>   Small white shelf
>   JVC stereo with speakers & CD
>   Sony DVD
>   Pyramid tuner
>   Sony Plasma TV
>   1 hutch with glass doors
>   1 sofa table
>   6 drawer low chest

Dining Room:
>   Gate Leg Oak dining room table
>   8 oak armchairs

Den:
>   Three cushion blue couch
>   2 blue chairs to match
>   Blue area rug
>   2 pine side tables
>   1 Uniden cordless phone
>   20" Sony TV
>   Nine drawer pine hutch
>   1 steel table lamp

Bath:
>   Shower curtain with liner
>   White bath rug

Hallway:
>   Large wooden mirror

### Master Bedroom:

King wooden Sleigh bed with linens and pillows
2 upholstered chairs
Wooden side table with chair
Armoire
1 Sony TV
2 bedside chests
2 glass lamps
Telephone
Alarm clock
Area rug

### Master Bath:

Ceramic soap dish, toothbrush holder & cup
Various white towels
Towel rack
Armoire
Floor bath rugs

## Bedroom #2

2 Twin beds with bed linens
2 quilt coverlets
2 picket fence style beds
4 Drawer chests with mirror
Nightstand
Lamp
Alarm clock
Blue & white rug

### Bath:

Shower curtain with liner
White bath rug
Wastebasket

## Bedroom #3:

Queen bed with bed linens– pine headboard
2 pine night tables
2 glass lamps
Blue & white area rug

### Bath:

White shower curtain with liner
White bath rug
Wastebasket

Case 1:05-cv-10164-JLT    Document 30    Filed 06/08/2005    Page 22 of 30
Jun 02 05 04:32p      Glidden & Glidden, PC      508-228-6205      p.18

Jul 17 03 01:37p      Glidden & Glidden, PC      508-228-6205      p.17

### Bedroom #4:

Queen Bed with bed linens
2 bed side table
2 lamps
1 white dresser
1 white & pine desk with chair
Beige & white area rug

### Bath:

White shower curtain with liner
Various white towels
Ceramic soap dish, toothbrush holder and cup

### Hall closet:

1 vacuum
1 Dustpan & broom

### Office:

3 cushion beige & white couch
Pine 3-drawer coffee table
Pine television cabinet
Sony DVD player
27" Sony TV
Pine desk
Fax machine
Assorted desk pieces
1 Oak armchair

### Basement:

4 trash cans

### Back Deck: (Main House)

Weber grill with 2 tanks
2 Teak chaise lounges
2 Teak side tables
2 Teak side chairs
1 Teak oval Table
6 Teak armchairs

## COTTAGE:

### Kitchen:

Toastmaster toaster
4 ceramic canisters
Various glass mugs
Silverware set
Stake knives
Various Tupperware
Ceramic platters
Blue & white table linens
Wooden cutting board
Paper towel holder
Glass baking dishes
Ceramic mixing bowls
Sunbeam hand mixer
Lobster pot
Baking sheet
Ceramic crock with various cooking utensils
2 ceramic bowls
Pots & pans
4 bar stools at snack bar

### Dining Area:

1 Dining room table
6 high back chairs

### Living Area:

1 couch
1 trunk with wooden bowl on top
2 wicker chairs with cushions
small side table
two floor lamps
small oval box side table
1 area rug
1 Panasonic TV

### Back Hall:

Small wicker chair at desk
Small hanging shelf
Ironing board
Iron

**Bath:**

>   Shower curtain with liner
>   White bath rug
>   Various white towels
>   Plastic soap dish. Toothbrush holder & cup
>   Plastic waste basket

**Bedroom #1:**

>   Queen Bed with bed linens
>   Wicker rocker
>   2 side tables
>   Plaid area rug
>   Window seat & four pillows
>   Alarm clock

**Bedroom #2:**

>   Queen Bed with bed linens
>   2 blue & white rugs
>   1 white wicker chair
>   1 window seat cushion
>   2 white end tables
>   1 white & wooden desk
>   wicker side chair
>   Desk lamp
>   Alarm clock
>   1 ATT cordless phone
>   1 Panasonic TV & VCR combo

**Bath:**

>   White bath rug
>   Clear basket
>   Coffee maker

**Deck:**

>   1 Teak Round Table
>   4 Teak Arm Chairs
>   2 Teak chaise lounges
>   1 Teak rectangle Table
>   4 Teak armchairs
>   1 Teak love seat

EXHIBIT  B

| Conditions Noted in Exterior Walls, Interior View: | Satisfactory - The exposed portions of the interior foundation perimeter walls appear to be satisfactory |
|---|---|
| Columns and Posts: | There are steel columns or posts installed. |
| Columns Condition: | Satisfactory - There is at least one post supporting an overhead beam in the basement  It appears to be adequately installed.  The main support columns or beams appear to be adequately fastened at top and bottom. |
| Main Beam: | Satisfactory - The main beam installed appears to be in satisfactory condition.  The main beam is made of layered dimensional lumber sandwiched together creating a built up beam. |
| Slab Foundation Floor Type: | A floating slab inside the foundation is used for this structure. |
| Floor Cracks Noted: | Yes - Cracks were noted in the slab floor.  Unless otherwise noted, the cracks appeared to be nothing more than curing cracks. |
| Basement Windows: | The windows as installed appear to be satisfactory. |
| Interior Stairway Access From: | Kitchen |
| Staircase Condition: | Satisfactory - The staircase to the basement level appears functional. |
| Moisture on Exposed Basement Walls Noted: | No - There were no elevated moisture levels noted on the exposed areas of the basement walls. |
| Evidence of Water Entry in the Basement Noted: | There is evidence of water entry or damage in the basement level. (Minor seepage from two snap ties that need to be grouted with hydraulic water proof cement. There is also minor seepage from where the walls meet the floor which should also be sealed with a waterproof cement. |
| Foundation Bolts Noted: | Yes - This inspection noted presence of foundation bolts correctly used to secure framing to the foundation. There was only a random look at these bolts or brackets, and no warranty as to their performance given |
| Lighting on the Basement Level: | Satisfactory - Overall lighting in the non living areas of the basement level is acceptable. |
| Electrical Service to Basement level: | Satisfactory - The electrical outlets in the basement level tested as correctly grounded  The basement level electrical outlets are protected with Ground Fault Circuit Interrupt protection as required by current standards.  Dedicated circuits should not be GFCI protected. |
| Evidence of Insect Infestation: | No - There was no visible evidence of insect infestation on the lower level. |
| Existing Radon Mitigation System: | No |

✗✗✗ OTHER ITEMS:

GARAGE DOOR (GUEST HOUSE): EYE BOLTS ATTACHED TO DOO
HAVE SPLINTERED WOOD ON
TOP OF GARAGE DOOR. NEED
REPAIR.

-6-

## CRAWL SPACE

**Crawl Space Entrance:** Satisfactory - The crawl space entrance is adequately sized.

**Location of Crawl Space Entrance:** There is an interior entry to the crawl space. (In the Guest House Living area floor)

**Crawl Space Ceiling Exposed Percent:** Only about 5% to 25% of the crawl space ceiling/floor joists were visible. Areas not visible are not commented on as a part of this inspection.

**Percent Interior Foundation Wall Exposed:** The interior view of the foundation is limited to the visible portions of the walls. Only about 50% to 75% of the interior foundation walls were visible. Areas not visible are not commented on as a part of this inspection.

**Conditions Noted in Exterior Walls, Interior View:** Satisfactory - The exposed portions of the interior foundation perimeter walls appear to be satisfactory.

**Sill Plates Percentage Visible:** Only about 5% to 25% of the interior foundation sills were visible. Areas not visible are not commented on as a part of this inspection. Visibility is limited due to insulation covering at least a portion of the sill cavities. This is a good energy saver but it limits the areas available for inspection.

**Moisture on Exposed Basement Walls Noted:** No - There were no elevated moisture levels noted on the exposed areas of the basement walls.

**Main Beam:** Satisfactory - The main beam installed appears to be in satisfactory condition. The main beam is made of layered dimensional lumber sandwiched together creating a built up beam.

**Crawl Space Ventilation:** Satisfactory - The cross ventilation in the crawl space appears to be adequate.

**Crawl Space Inspected By:** The crawl space was inspected by entrance and crawling through.

**Crawl Space Floor:** Sand.

**Posts Condition:** Satisfactory - There is at least one post supporting an overhead beam in the crawl space. It appears to be adequately installed

**Evidence of Water Entry in the crawl space Noted:** No.

**Evidence of Insects or Animals in Crawl Space:** No - There was no evidence of animal or insect infestation noted.

**Electrical Service:** NOTE: The small transformer located over the air handler has a wire that has been disconnected from the transformer. The heating technician should be contacted to repair it.

- 7 -

| Floor Framing Members Size. | The floor framing is constructed with 2" x 8" members. The floor / ceiling is framed with 16 inch centers. |
|---|---|
| Exposed Floor/Ceiling Framing Condition: | Satisfactory - The exposed portions of the floor framing and ceiling joist members are in satisfactory condition. |
| Wall Covering Material: | The wall covering material is, sheetrock. |
| Ceiling Covering Material: | The predominate ceiling covering material is, Sheetrock. |

## Deck, Porch or Balcony:

| Wood Deck or Porch: | Wood decks   Wood porch. |
|---|---|
| Location: | Rear upper and lower decks and upper Porch with a wrap around Porch on the Guest House. |
| Deck / Porch / Balcony Materials: | It appears that C.C.A. treated wood materials were used in the deck frame construction. This type of treated wood is usually warranted for a 25 to 30 year period against wood rot and insect deterioration. |
| Condition of Wood Materials: | Good - The wood deck materials are either new or nearly new and in good condition. |
| Framing of Deck / Porch: | Satisfactory - The framing of the deck or porch was done in an acceptable manner. There are joist hangers installed. |
| Deck, Porch or Balcony Flooring Material: | Attention Needed - The decking materials need some repair to function as intended. There are five deck boards that were not fastened to the framing below and are cutting up. (At the lower deck at the rail) |
| The Foundation Materials: | The deck support posts are set in concrete. Unable to determine if set to the frost line. |
| Stairs Condition: | Satisfactory - The steps are in useable condition. |
| Deck or Porch Railings: | Satisfactory - The railings as installed are functional. The spacing between balusters is 4" |
| Comments: | There is a "Widow's Walk" on the roof. It could not be inspected because the roof hatch was locked. |

## FIREPLACE:

| Location of Fireplace: | Living Room |
|---|---|
| Type of Fireplace: | Masonry - There is a masonry built fireplace installed. |
| Fireplace Fuel: | Wood - The fireplace was designed to burn wood. |
| Firebox Condition: | Satisfactory - The firebox appears to be sound and useable in its current condition. |

- 13 -

# PLUMBING SYSTEM ( p 20, 21, 22 )

## Plumbing:

**Water Source:**
Private Water Source - A private water source may include a well, cistern, or exposed pond or lake. None of these sources have approved quality standards by the State or County Health Departments. It is the homeowner's responsibility to maintain continuous testing of the water source for potability. Testing of the private water source may be obtained by the Inspection Company under separate direction and cost.

**Plumbing Service Piping Size to Structure:**
1" water service line from meter to main cutoff.

**Public Service Piping Material:**
The main service line to the structure is plastic.

**Main Water Line Cutoff Location:**
Basement level wall.

**Visible Mineral Deposits or Encrustation's:**
No.

**Interior Supply Piping:**
The interior water supply piping is 1/2" diameter.

**Interior Supply Piping Material:**
The interior supply piping in the structure is predominately copper.

**Water Pressure:**
Water pressure was checked at an exterior hose bibb. The pressure tested at 42 psi. Water pressure from 40 to 80 pounds per square inch is considered within normal/acceptable range.

**Exterior Hose Bibbs Functional:**
Satisfactory - The exterior hose bibb(s) appeared to function normally.

**Functional Supply:**
Satisfactory - By testing multiple fixtures at one time, functional flow of the water supply verified.

**Leaks in the Supply Piping Noted:**
Action Necessary - There is a leak in the supply system. Services of a qualified licensed plumber may be required.

**Location of Leak in Supply Line:**
Small leak in the tub drain in the Basement. (Near the door from the Garage)

**Sewage Disposal Type:**
Septic System.

**Waste Line Materials**
The predominate waste line material is plastic.

**Waste Piping Condition:**
Satisfactory - The visible plumbing waste piping appears functional.

**Vent Piping Material**
The vent material, as it passes through the roof, is copper.

**Vent Piping Condition:**
Satisfactory - The visible plumbing vent piping appears functional

**Supply/Waste Piping Supports:**
Satisfactory - The tie straps and hangers supporting supply and waste piping appear adequate.

| Heat Source: | Satisfactory - There is a heat source in this room. |

## Bathroom:

| Location: | 1st floor, middle, off the middle Bedroom. |
| Entry Door: | Attention Needed - The entry door or hardware to this bathroom needs some adjustment or repair to function appropriately. (The lock is defective) |
| Walls: | Satisfactory - The walls in this bathroom are satisfactory. |
| Windows: | None - There is no window in this bathroom. |
| Ceiling: | Satisfactory - The ceiling in this bathroom is satisfactory. |
| Floor: | Satisfactory - The flooring in this bathroom is satisfactory. The floor covering material is, hardwood. |
| Lighting: | Satisfactory - The ceiling light and fixture in this bathroom are in satisfactory condition. |
| Ventilation Fans: | Satisfactory - There is a an exhaust fan installed in this bathroom and it is performing satisfactory. |
| Ground Fault Interrupt Outlets: | Satisfactory - There is a functional ground fault circuit interrupt outlet installed in the area of the bathroom vanity. |
| Light Switch: | Satisfactory - The light switch is satisfactory. |
| Vanity Cabinet: | Good - The vanity cabinet and top in this bathroom is of a better quality than I expected to find. |
| Basin and Drain Fixture: | Satisfactory - The basin and drainage fixture appear to be satisfactory. |
| Faucet and Supply Lines: | Satisfactory - Faucets and supply lines appear satisfactory. There are shutoffs installed for both hot and cold water pipes under the basin. |
| Toilet Condition | Satisfactory - The toilet in the bathroom appears to be functional. |
| Tub: | Steel Tub OK - The bathtub is a steel material with a solid finish applied. It appears to be in satisfactory condition. |
| Tub Mixing Valve & Stopper: | Satisfactory - Tub mixing valve and tub unit are in satisfactory condition. |
| Shower/ Shower Head and Mixing Valves: | Satisfactory - The shower, shower head and mixing valves are all performing as required. |
| Tub & Shower Walls: | Satisfactory - The walls appear to be in satisfactory condition. |
| Tub/ Shower Drain: | Satisfactory - The tub/shower appears to drain at an acceptable rate. |
| Glass Tub/ Shower Door: | No, There is a shower curtain installed. |
| Caulking / Water Contract Areas: | Satisfactory - The caulking in the water contact areas appears to be satisfactory. |

# OTHER LIVING SPACES ( 9.38,39 40

## Front Entry and Main Hallway:

| The Main Entrance Faces: | West. |
|---|---|
| Front Entrance Door: | Satisfactory - The main entry door to the structure is in functional condition. |
| Screen/Storm Door: | Satisfactory - There is a combination storm and screen door installed and it appears to be functional. |
| Entry Floor: | Good - The entry floor material is in good condition. The floor covering material is hardwood. |
| Main Hallway: | Satisfactory - The main hallway walls and floor are in satisfactory condition. |
| Main Staircase: | Satisfactory - The main staircase is appropriately installed. There is a handrail installed. The staircase is adequately lighted. |

## Living Room:

| Location: | 1st floor, left side. |
|---|---|
| Entry Door other than Front Entry Door: | Satisfactory - The outside entry door(s) to this room are satisfactory |
| Walls: | Satisfactory - The walls in this room appear to be satisfactory. |
| Ceiling: | Good - The ceiling in this room is in good condition. |
| Ceiling Fan: | Good - There is a ceiling fan installed in this room. Used correctly, this can make the room feel more comfortable. |
| Floor: | Attention Needed - The floor in this room is in need of some attention. (There is buckling of the floor where it is exposed to the light and rain at the atrium door) |
| Windows: | Satisfactory - The windows and associated hardware in this room are all satisfactory. |
| Electrical Outlets: | Satisfactory - The outlets tested in this room are correctly wired and grounded. |
| Telephone Access or Jack: | Yes - There is a telephone jack installed in this room. It may or may not be functional. |
| Cable TV: | Yes. |
| Heat Source Noted: | There is a heat source to this room. No comment as to amount of air or temperature coming from the supply vent. |
| Fireplace: | Yes - There is a fireplace in this room. It has a satisfactory visual appearance. There was an inspection completed on the fireplace. It is under the Structural Section. |

( MAIN HOUSE )

✱✱✱  KITCHEN (OTHER DEFECTS) : SHELVING IN KITCHEN
CABINETS HAVE NOT BEEN FINISHED WITH WOOD
TRIM . REPAIR TRIM WHERE MISSING.